IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No._____

**ADAM BURKE,**

Plaintiff,

v.

**GARFIELD COUNTY SHERIFF'S DEPARTMENT, LOU VALLARIO, Sheriff of Garfield County, Colorado, in his official capacity; SCOTT DAWSON, a Commander in the Garfield County Sheriff's Department, in his official capacity,**

Defendants.

## COMPLAINT

Plaintiff, Adam Burke, by and through attorneys, IRWIN & BOESEN, P.C., alleges and avers as follows in support of this Complaint against Defendants:

### IV. PARTIES

1. At all times relevant hereto, Plaintiff, Adam Burke, was an indigent detainee in the Garfield County Jail, Garfield County, Colorado.

2. At all times relevant hereto, Defendant Garfield County Sheriff's Department, was responsible for operating the Garfield County Jail.

3. At all times relevant hereto, Defendant Lou Vallario, was the Sheriff of Garfield County, Colorado. He has final policy making authority for all matters relating to management of the Garfield County Jail. His employees and agents include the deputies who work in the jail. Sheriff Vallario is sued in his official capacity.

4. At all times relevant hereto, Defendant Scott Dawson held the rank of Commander in the Garfield County Sheriff's Department. He was an agent and employee of Defendant Vallario. Defendant Dawson is in charge of the Detention Division of the

1

Garfield County Sheriff's Department. The deputies at the jail are his agents and subordinates. He has primary responsibility for managing and supervising the day-to-day operations of the jail; for formulating and implementing policies and procedures; for ensuring that those policies and procedures are followed; and for ensuring that deputies are adequately trained to carry out their responsibilities in a manner consistent with the health, safety, welfare, and constitutional rights of prisoners. He is sued in his official capacity.

5. At all times relevant herein and with respect to all actions described herein, all Defendants and their agents and employees were acting under color of state law.

## GENERAL ALLEGATIONS

6. The restraint chair is a metal framed chair on wheels with seven straps designed to fully immobilize a prisoner's legs, arms, and body. When used as designed, arms are strapped to horizontal armrests. Legs and ankles are secured. Additional straps go around the prisoner's waist, and over each shoulder. Only the prisoner's head and neck retain some mobility.

7. The use of fully-immobilizing restraints such as the restraint chair poses substantial risks to prisoners' physical and mental health.

8. In a letter previously sent to Defendants, Amnesty International noted that at least 18 prisoners have died while strapped in restraint chairs in jails and prisons in the United States. Some of those deaths occurred after the prisoners had also been subjected to pepper spray and/or electroshock weapons.

9. Amnesty International also informed the Defendants that the United Nations Committee Against Torture had expressed its concern that the unregulated use of the

restraint chair in the United States could lead to violations of this country's obligations under the Convention Against Torture and other Cruel, Inhuman or Degrading Treatment or Punishment.

10. Amnesty's letter also informed the Defendants that the United Nations Standard Minimum Rules for the Treatment of Prisoners stipulate that restraints should never be applied as a punishment, and further provide that restraints may be used only when other measures are ineffective and only for so long as is "strictly necessary".

11. The American Correctional Association (ACA) requires that jails draft written policies that forbid the use of restraints as punishment. Instead, restraints must be used "only in extreme instances and only when other types of restraints have proven to be ineffective." The ACA standards also require that deputies keep a prisoner under continuous visual observation until healthcare authorities arrive and approve the use of restraints. Upon arrival, the healthcare personnel must "assess the inmate's medical and mental health condition," and must advise whether the prisoner presents a serious danger to self or others and whether the prisoner should be placed in a medical or mental health unit for medical management and supervision. The ACA standards also require that visual observation of a prisoner held in the restraint chair must be carried out every 15 minutes.

12. Manufacturers and venders of restraint chairs impose even greater restrictions on the use of the devices. For example, one vender of the Emergency Restraint Chair purchased by the Garfield County Jail advises on its web site as follows:

> Violent behavior may mask dangerous medical conditions therefore detainees must be monitored for and provided with medical treatment if needed. Detainees

3

should not be left in the Emergency Restraint Chair for more than two hours. The Emergency Restraint Chair should **never** be used as a means of punishment. http://www.restraintchair.com/diagram.htm, accessed July 4, 2006 (Emphasis in original)

13. The Defendants have not adopted any written policy governing or regulating the use of the restraint chair in the Garfield County Jail.

14. Pursuant to the custom and informal unwritten policy in place at the Garfield County Jail, deputies commonly and frequently use the restraint chair in a manner that violates international and national standards for treatment of prisoners; violates the recommendations of the venders and manufacturers; poses an unreasonable and unjustifiable risk of harm to prisoners' health and safety; causes mental distress, pain, and physical injuries; and violates prisoners' constitutional rights.

15. Defendants commonly use the restraint chair in combination with the use and threatened use of other devices that present additional risks to prisoners' health, safety, and constitutional rights, such as the pepperball gun.

16. The Pepperball gun launches high velocity pellets that explode on impact, releasing a super-irritant called PAVA, or Capsaicin II, which is chemically similar to, but more concentrated than, the irritant in pepper spray.

17. The pepperball gun has a "laser sight" that pinpoints the target. It can shoot six to twelve pellets per second at speeds up to 380 feet per second. Prisoners hit by pepperballs suffer large welts, bruises, and open bleeding wounds. When the pellets break, they release a burst of PAVA powder into the eyes, nose, and lungs. When inhaled, PAVA powder causes acute burning of the eyes, temporary blindness, and severe inflammation the mucous membranes and upper respiratory system that in turn leads to uncontrollable

coughing fits. It can prompt uncontrollable gagging, gasping or vomiting; intensely painful burning sensations; and panic. The PAVA dust itself poses risks to prisoners' health and safety that are similar to the risks of OC spray, and the manufacture specifically warns that pepperballs can precipitate asthma attacks.

18. Firing the pepperball gun at prisoners is a substantial use of force that, except in extreme emergencies, must always be preceded by a verbal warning that provides a prisoner with a reasonable opportunity to comply with deputies' orders. Nevertheless, Defendants approved the actions of deputies who fired the pepperball gun directly at prisoners' bodies without first providing a verbal warning and a reasonable opportunity to comply.

19. The manufacturer of the pepperball gun instructs that, instead of shooting directly at a prisoner's body, officers should first aim at a wall, floor, or other hard surface, which will cause the pellets to break and release the PAVA dust. The manufacturer instructs that pepperball pellets should be aimed at a prisoner's body only if shooting at a wall or floor fails to achieve the desired result.

20. Despite the manufacturer's instruction, however, it is standard practice for Garfield County Jail deputies to aim the pepperball gun, as a first resort, directly at a prisoner's body. Deputies do this even when shooting the pepperball gun at very close range into prisoners' tiny cells. A prisoner's tiny cell is quickly saturated with pepper dust when the pepperball gun is aimed at any hard surface.

21. The manufacturer instructs that if officers determine that they must aim the pepperball gun directly at a person's body, it should not be aimed at the head, face, neck,

or groin area. The manufacturer warns that direct hits in those areas can cause serious injury or even death.

22. The manufacturer instructs that after use of the pepperball gun, a prisoner should be promptly decontaminated to remove the PAVA chemical.

23. All of the foregoing acts and omissions of Garfield County Jail deputies were carried out pursuant to the informal policies, customs, and practices of the Defendants and the Garfield County Sheriff's Department. In the alternative and in combination, Defendants have been and remain deliberately indifferent to the risk that their deputies will violate prisoners' constitutional rights.

24. The abuse of restraints chairs and pepperball guns poses a serious and obvious risk to prisoners' health and safety and a risk that their constitutional rights will be violated. Law enforcement authorities typically attempt to address the potential risks of such devices by drafting written policies designed to mitigate the potential for abuse and mitigate the potential risk to health and safety.

25. On January 24, 2006 Plaintiff was locked in his cell when Deputy Matt Anderson shot him with a pepperball at close range through the food portal. Plaintiff sustained two shots to his groin. Deputy Anderson then shot several pepperballs into the back wall, Plaintiff's right foot, Plaintiff's right hand, and several more shots into the back wall.

26. After being shot with pepperballs on January 24, 2006, Plaintiff was then forced into a restraint chair, where he remained for the next three hours without the opportunity to wash the pepperball chemicals from his face, body and clothing and any medical attention for his shot wounds. Despite his complaints of injury to his testicles, Plaintiff

was not provided any medical attention for the wounds sustained as a result of the pepperball shooting for nearly twenty two hours.

27. On March 4, 2006, Plaintiff was placed in the restraint chair because he complained of water running on the floor of his cell. He was left in the restraint chair from March 4, 2006 at 21:50 until March 5, 2006 at 02:00, over four hours. When Plaintiff complained of shoulder pain after being released from the restraint chair, his complaints were dismissed. His requests to be transferred to the emergency room were denied and he was not seen by the physician on staff until March 7, 2006.

28. Defendants have failed to adopt written policies to regulate the detention deputies' use of force on prisoners.

29. At all times relevant, Defendants had no written policy for the Detention Division regarding the continuum of permissible force that deputies can use on prisoners. In addition, they had no written policy for the Detention Division that regulates the use of the restraint chair or the pepperball gun.

30. The absence of written policies represents a deliberate and conscious choice on the part of the Defendants.

31. Until Sheriff Vallario took office, the Detention Division was regulated by written policies that established a continuum of force. A written policy governed the use of the restraint chair. On information and belief, Defendants deliberately chose to discard the written policies adopted by the previous jail administrators.

32. When the NIC presented a brief written evaluation of the jail in 2005, it stated the Detention Division lacked sufficient written guidance in the form of written policies and procedures. It strongly advised that the Sheriff draft a comprehensive policy and

procedure manual. At the time, the Sheriff's policy and procedure manual contained only 11 policies applicable to the Detention Division, none of which addressed the use of force in general or the use of the restraint chair or the pepperball gun.

33. The Defendants have failed to ensure that deputies at the Garfield County Jail are adequately trained in the use of force in general and in the safe and appropriate use of such devices as the restraint chair and the pepperball gun.

34. The lack of adequate training is manifested in part by the absence of written policies. It is further manifested by the informal custom and policy of using the restraint chair and the pepperball gun in a manner that poses an unjustifiable risk of substantial harm to prisoners' health and safety; violates widely-accepted correctional standards; violates the recommendations or instructions of the manufacturers or venders regarding the proper and safe use of the devices; and/or violates prisoners' constitutional rights.

35. The lack of adequate training is further manifested by the Defendants' failure to maintain any documentary materials that describe or memorialize the content of any training sessions or training curricula regarding the safe and appropriate use of the pepperball gun.

36. The Defendants' failure to ensure adequate training has caused violations of the constitutional rights of the Plaintiff.

37. As a direct, legal and proximate result of the actionable conduct of the Defendants, the Plaintiff has sustained injuries, damages and losses including, but not limited to, the following:

    A.    Serious bodily injuries resulting in permanent physical impairment and disfigurement.

  B. Medical and rehabilitation expenses, both past and future.

  C. Nonecomonic losses, including (but not limited to): physical pain, mental anguish, emotional distress and suffering, and the loss of enjoyment of life, both past and future.

## FIRST CLAIM FOR RELIEF

### (Pursuant to 42 U.S.C. § 1983, Deprivation of Substantive Due Process – All Defendants)

38. Plaintiff hereby incorporates all paragraphs of this Complaint, including all subparagraphs, as though fully set forth herein.

39. Plaintiff brings this action under and pursuant to 42 U.S.C. § 1983 to obtain remedy for harms caused by the Defendants acting under color of state law, which violate Plaintiff's rights, privileges and immunities guaranteed by the United States Constitution, and under and through the Fourteenth Amendment to that United States Constitution.

40. Defendants are all persons for the purposes of 42 U.S.C. § 1983.

41. The aforementioned actions of Defendants deprived Plaintiff of liberty and property.

42. Defendants took the aforementioned actions in the absence of any right or need, and Defendants actions constitute an irregular exercise of the authority conferred on Defendants.

43. The actions taken by Defendants' violated relevant federal and state statutes and regulations.

44. The extent of injury inflicted by the Defendants' actions was significant. As a direct, legal and proximate result of Defendants' actions complained of herein, Plaintiff

has suffered in the past and will continue to suffer in the future the injuries, damages and losses set forth in this Complaint.

## SECOND CLAIM FOR RELIEF

### (Pursuant to 42 U.S.C. § 1983, Failure to Train and Supervise)

45. Plaintiff hereby incorporates all paragraphs of this Complaint, including all subparagraphs, as though fully set forth herein.

46. Administration, management and operation of the Garfield County Jail is a government function.

47. Defendants were responsible for the adequate training and supervision of the staff beneath them regarding maintaining the health and safety of all persons confined at the Garfield County Jail.

48. Defendants knew that the failure to properly train and supervise the staff beneath them regarding policy and procedure for use of the restraint chair and/or pepperball guns would result in harm to prisoners.

49. It was foreseeable there would be safety, civil rights and administrative violations to prisoners subjected to use of the restraint chair and/or pepperball gun.

50. Defendants failed to adequately train or supervise the staff beneath them even though they knew, or had reason to know, that the failure to adequately administer use of the restraint chair and/or pepperball gun was likely to be the cause of the deprivation of the constitutional rights to prisoners.

51. Defendants maintained a deliberate indifference to the obvious safety needs of the Plaintiff, knowing that potentially serious consequences could be suffered by the Plaintiff because of their failing to properly hire, train and supervise the staff beneath

them. Defendants could have and should have pursued reasonable methods for the training and supervising of such employees, but failed to do so.

52. As a direct, legal and proximate result of Defendants' actions complained of herein, Plaintiff has suffered in the past and will continue to suffer in the future the injuries, damages and losses set forth in this Complaint.

## THIRD CLAIM FOR RELIEF

**(Threats and use of excessive and disproportionate force; punitive use of restraints)**

**(Eighth and Fourteenth Amendments; Colo. Const. Art. II Secs. 20, 25)**

53. Plaintiff hereby incorporates all paragraphs of this Complaint, including all subparagraphs, as though fully set forth herein.

54. Defendants have subjected and threatened to subject Plaintiff to the use of force, including the use of restraint chairs and pepperball guns, in a manner that constitutes excessive and disproportionate physical force; unnecessarily and wantonly inflicts mental and physical pain; shocks the conscience; inflicts corporal punishment and mental suffering as retaliation or punishment for past conduct; poses an unreasonable and unjustifiable risk of harm to their health and safety; and that is not reasonably related to any legitimate governmental objective, in violation of the Due Process Clause of the Fourteenth Amendment and Article II, Section 25 of the Colorado Constitution.

55. Defendants have subjected Plaintiff to the use of force, including the use of restraint chairs and pepperball guns in a manner that constitutes excessive and disproportionate physical force imposed maliciously and sadistically for the purpose of causing harm; intentionally inflicts corporal punishment and physical and mental pain as retaliation or punishment for past conduct; unnecessarily and wantonly inflicts mental

and physical pain; poses an unreasonable and unjustifiable risk of harm to his health and safety; is not reasonably related to any legitimate penological interest; and inflicts cruel and unusual punishment, in violation of the Eighth Amendment and Article II, Section 20 of the Colorado Constitution.

56. Defendants' acts and omissions, and threatened acts and omissions, were carried out pursuant to the policies, customs, and practices of the Defendants. In adopting, authorizing, and ratifying those policies customs and practices, Defendants have been deliberately indifferent to the risk of violating the constitutional rights of the Plaintiff.

57. Alternatively and in combination, Defendants' deliberately indifferent failure to ensure adequate training of their deputies has caused violations of the Plaintiffs' constitutional rights.

58. Alternatively and in combination, Defendants' deliberately indifferent failure to ensure adequate monitoring and supervision of their deputies' conduct has caused violations of the Plaintiff's constitutional rights.

59. As a direct, legal and proximate result of Defendants' actions complained of herein, Plaintiff has suffered in the past and will continue to suffer in the future the injuries, damages and losses set forth in this Complaint.

### FOURTH CLAIM FOR RELIEF

**(Eighth and Fourteenth Amendments; Colo. Const. Art. II, Secs. 20, 25)**

**(Freedom from Bodily Restraint)**

60. Plaintiff hereby incorporates all paragraphs of this Complaint, including all subparagraphs, as though fully set forth herein.

61. Even when they are legitimately confined after a criminal conviction, Plaintiff retains a liberty interest in freedom from bodily restraint, which is protected by the Due Process Clause of the Fourteenth Amendment and Article II, Section 25 of the Colorado Constitution.

62. Prisoners who are strapped in a restraint chair experience an atypical and significant hardship in relation to the ordinary incidents of life in a detention facility or a prison.

63. Defendants have subjected Plaintiff to confinement in the restraint chair under circumstances that deprived him of his liberty interest in freedom from bodily restraint, without due process of law.

64. Defendants' acts and omissions, and threatened acts and omissions, were carried out pursuant to the policies, customs, and practices of the Defendants. In adopting, authorizing, and ratifying those policies customs and practices, Defendants have been deliberately indifferent to the risk of violating the constitutional rights of the Plaintiff.

65. Alternatively and in combination, Defendants' deliberately indifferent failure to ensure adequate training of their deputies has caused violations of the Plaintiff's constitutional rights.

66. Alternatively and in combination, Defendants' deliberately indifferent failure to ensure adequate monitoring and supervision of their deputies' conduct has caused violations of the Plaintiff's constitutional rights.

67. As a direct, legal and proximate result of Defendants' actions complained of herein, Plaintiff has suffered in the past and will continue to suffer in the future the injuries, damages and losses set forth in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, respectfully requests that this Court enter judgment in favor of the Plaintiff and against Defendants and grant the following relief:

- A. Compensation for past and future noneconomic losses, including physical pain, mental anguish, emotional distress and suffering, and the loss of enjoyment of life, both past and future;

- B. Compensation for past and future noneconomic losses, including permanent physical impairment and disfigurement;

- C. Nominal, actual and special damages as allowed by law;

- D. Such attorney's fees as allowed by law;

- E. Such damages as may be allowed by the Court following disclosures or discovery;

- F. Interest as provided by law;

- G. Plaintiffs' costs; and

- H. Such further relief as the Court deems proper.

Respectfully submitted this 22 day of January, 2008.

Respectfully submitted,

IRWIN & BOESEN, P.C.

*Duly signed original on file*
/s/ Andrea L. Blanscet

Lane N. Cohen, Reg. No. 35558
Andrea L. Blanscet, Reg. No. 38196
501 South Cherry Street, Suite 500
Denver, CO 80246
Telephone: (303) 320-1911
Facsimile: (303) 320-1915

14